FRANK HENDERSON V. THE STATE.

No. 16365. Delivered November 22, 1933.
Rehearing Denied, Without Written Opinion, January 10, 1934.
Reported in 67 S. W. (2d) 266.

The opinion states the case.

Rowell & Rowell, of Jefferson, for appellant.

Lloyd W. Davidson, State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—The offense is rape of a female under the age of sixteen years; penalty assessed at confinement in the penitentiary for five years.

It is charged by indictment filed November 18, 1931, that on July 17th of that year, the appellant committed the offense of rape. The case was tried on May 31, 1933. The motion for new trial was filed June 10, 1933. The motion is founded upon the claim of the discovery of new and material evidence favorable to the appellant:

No statement of the facts heard upon the trial is before this court.

In Bill of Exception No. 1, it appears that the state's attorney, in the course of his argument to the jury, made the following statement: "I have a young daughter—some of you have daughters—I had rather follow my child to the silent city of the dead, and if I have another daughter, I had rather follow her to the grave than see them mount this witness stand and go through details and cross-examination, and go through what this young girl has gone through at the hands of this defendant."

From Bill No. 2 it is made to appear that the testimony of

both the state and the appellant was to the effect that the prosecutrix and the appellant had met at a skating rink in Jefferson, Texas, on the night of July 17, 1931, which was the night on which the offense is charged to have been committed; that they left the skating rink together in the appellant's automobile. There is no evidence that the skating rink was improperly conducted. Complaint is made of the following argument of the district attorney: "She made a mistake by ever going to the skating rink, a place of crime—a place of seduction. She made a mistake. We know that—places of this kind more women and girls lose their virtue and respect than at any other place."

Bill No. 3 reflects that the appellant, by proper procedure, sought a suspension of his sentence in case of a conviction. According to the bill, some ten or twelve reputable citizens, male and female, vouched for the good general reputation of the appellant as a peaceable, law-abiding citizen; also that he had a good reputation for chastity and morality. There was no opposing testimony upon the subject. In discussing the matter of the application for a suspended sentence, the state's counsel made the following argument: "I say to you, gentlemen of the jury, go out and write a verdict in this case so that you can go to your own homes after it is all over unashamed and meet your own daughters face to face and tell them by your verdict what you think. * * * Don't give him a suspended sentence."

The bill is approved with the following limitation by the trial judge: "* * * and approved to the extent that this argument was made, objected to by defendant's counsel, and was withdrawn from the jury by the court, etc."

From Bill of Exception No. 4, we take the following quotations:

"That during the trial of this cause the prosecutrix testified that she met the defendant, Frank Henderson, at the skating rink at Jefferson, Texas, on the night this alleged offense is supposed to have happened, and that she and the defendant left the skating rink some time after twelve o'clock that night and got in defendant's car which was parked opposite the skating rink on highway 49 and facing in a westerly direction, which is opposite to the direction in which prosecutrix was living; that the defendant was supposed to take her to her home but instead of doing so he drove out on highway number 49 a distance of a mile or two, then parked his car and there proceeded to rape her in the front seat of a Dodge Sedan. She further testified that after defendant had accomplished his acts

he then started the car and drove her to her home, which is about three quarters or a mile in an easterly or southern direction from the skating rink. She further testified that she got in defendant's car the one time that night and passed in front of the skating rink one time.

"The defendant denied that he had had intercourse with the prosecutrix on this particular night or any other night, but did testify that he met prosecutrix at the skating rink on this particular night and that he promised to take her home after they finished skating; that some time after twelve o'clock that night he left the skating rink with prosecutrix, got in his car which was parked as testified by prosecutrix, and drove in a westerly direction on highway number 49 a distance of about two blocks to a point where the Linden and Atlanta highway intersect highway No. 49 at which point he turned his car completely around and drove back along highway No. 49 in front of the skating rink and carried the prosecutrix straight to her home, and was back at the skating rink witihn ten or fifteen minutes after he left with the prosecutrix."

It is stated in the bill that on June 10, 1933, the appellant filed his motion for new trial in which he related the facts in substance as stated above, outlining his version of the transaction as well as that of the prosecutrix. From the bill we quote further: "Since the trial of this cause defendant had learned that Mr. Wheeler Blaxton, who lives at Rodessa, Louisiana, a deputy sheriff under Sheriff Hughes of Caddo Parish, Louisiana, was present at the skating rink on the night of July 17, 1931, when this alleged offense was supposed to have happened, and that he saw this defendant when he left the skating rink with Miss Wakeland; that he saw the two of them get in Henderson's car and drive up highway No. 49 west a distance of about two blocks to a point where the said highway No. 49 intersects the highway going to Linden and Atlanta; that the said defendant turned in on the Linden and Atlanta road, backed his car up and made a complete turn and came back by the skating rink and then drove down toward the town of Jefferson."

By averments in the motion it was asserted that not until after the trial and conviction on May 31, 1933, did he become aware of the fact that Blaxton was present at the skating rink on the occasion of the alleged offense, or that he would give the testimony mentioned, and that since the discovery, due to lack of time and illness of his father, the appellant had not been able to procure the deposition of Blaxton. In the bill is copied the statement of the appellant's mother verifying the assertion

in the motion that Blaxton would give the asserted testimony.

Aside from the question of diligence in the discovery and production of the alleged newly discovered evidence, its possible influence or weight upon the whole case is not discoverable by this court in the absence of a complete statement of facts which were before the jury. In the absence of the evidence before the jury, every presumption will be in favor of the regularity of the conviction, the charge of the court and the sufficiency of the evidence. See Branch's Ann. Tex. P. C., p. 309, and cases cited, including Davis v. State, 2 Texas App., 162, and others. In view of the record, the alleged contradiction or conflict between the testimony of the appellant and that of the prosecutrix, as it is sought to have been shown by the absent witness, is not such as would warrant this court in interfering with the verdict. In fact, instances in which the court has ordered a reversal in the absence of a statement of facts are mainly those in which there is some fundamental error manifestly injurious to the accused on trial. See Henderson v. State, 20 Texas App., 304; Banks v. State, 24 Texas App., 559, and other cases cited in Branch's Ann. Tex. P. C., pp. 309-310. In no case coming to our attention has there been a reversal where the statement of facts was incomplete except in those in which some vital error in the procedure has been committed. See Branch, supra, pp. 309-311 for illustrations.

The several bills of exception complaining of the argument of counsel have been examined. The importance of the facts as bearing upon the effect of the argument of which complaint is made has often been adverted to and emphasized in the opinions of this court. Among the recent cases are McCully v. State, 40 S. W. (2d) 116; Slone v. State, 50 S. W. (2d) 301; Garza v. State, 50 S. W. (2d) 322; Williams v. State, 54 S. W. (2d) 121.

The verdict is likewise a matter that the court must take into account in passing upon the complaint of the alleged improper argument. In the present instance, the verdict is the lowest allowed by law, and as stated above, the evidence that was before the jury is not at hand in the consideration of this appeal.

We are constrained to conclude that in Bills of Exception Nos. 1 and 2, there is exhibited no error which would warrant this court in disturbing the verdict.

Of Bill No. 3, we take note of the fact that the argument of which complaint is made was withdrawn by the judge presiding at the trial.

Upon the record before us, we are of the opinion that an

affirmance of the judgment is the proper disposition of the case, which is accordingly ordered.

*Affirmed.*